

```
MAR 2 6 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
```

OA 91 Criminal Complaint

# United States District Court

__NORTHERN__ DISTRICT OF __CALIFORNIA__

UNITED STATES OF AMERICA
V.
CYNTHIA P. CURRAN

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

Case Number:

3  08  70179  JCS

I, the undersigned complainant being duly sworn state that the following is true and correct to the best of my knowledge and belief. On or about **& from 4/1/2003 - 6/23/2006** (Date) in **San Mateo** County, in the **Northern** District of **California** defendant(s) did,

(Track Statutory Language of Offense)

(1) embezzle, steal, and unlawfully and willfully abstract and convert to her own use and to the use of another, an amount of the moneys, funds, securities, premiums, credits, property, and other assets of an employee welfare benefit plan and employee pension benefit plan, and of a fund connected therewith; and (2) knowingly make a false statement and representation of fact and knowingly conceal, cover up, and fail to disclose a fact the disclosure of which is required by Title I of the Employee Retirement Income Security Act of 1974 (ERISA) in a document required by ERISA.

in violation of Title __18__ United States Code, Section(s) __664 and 1027__.

Maximum Penalties:
Five years imprisonment, $250,000 fine, 3 years supervised release, $100 special assessment.

I further state that I am a(n) __Senior Investigator (Pension), U.S. Dept. of Labor__ and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT MADE A PART HEREOF.

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

Approved As To Form: Owen P. Martikan
AUSA

David W. Moltzen, Senior Investigator, U.S. Dept. of Labor
Name/Signature of Complainant

Sworn to before me and subscribed in my presence,

__3/26/08__   at   __San Francisco, California__
Date                          City and State

Hon. Joseph C. Spero   U.S. Magistrate Judge
Name & Title of Judicial Officer          Signature of Judicial Officer

| | |
|---|---|
| UNITED STATES DISTRICT COURT | ) |
| | ) ss. AFFIDAVIT |
| NORTHERN DISTRICT OF CALIFORNIA | ) |

AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT CHARGING CYNTHIA P. CURRAN WITH VIOLATIONS OF 18 U.S.C. § 664, THEFT OR EMBEZZLEMENT FROM EMPLOYEE BENEFIT PLAN, AND 18 U.S.C. § 1027, FALSE STATEMENTS AND CONCEALMENT OF FACTS IN RELATION TO DOCUMENTS REQUIRED BY THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974

I, David Moltzen, declare and state as follows:

### I.   INTRODUCTION

1.   I am a Senior Investigator (Pension) employed by the United States Department of Labor, Employee Benefits Security Administration, San Francisco Regional Office, 90 7th Street, Suite 11300, San Francisco, CA 94103. I have been an investigator with this agency for ten years.

2.   I submit this affidavit in support of a complaint and summons for CYNTHIA P. CURRAN ("CURRAN") for violating 18 U.S.C. § 664, Theft Or Embezzlement From Employee Benefit Plan, and 18 U.S.C. § 1027, False Statements And Concealment Of Facts In Relation To Documents Required By the Employee Retirement Income Security Act Of 1974 ("ERISA").

3.   On November 24, 2006, my office opened a criminal investigation of CURRAN based on a referral from the San Mateo County District Attorney's Office. The facts set forth herein are based on my interviews with witnesses, my review of corporate and financial records, and my review of investigative reports.

### II.   BACKGROUND OF EMPLOYER AND 401(k) PLAN

4.   My investigation has disclosed that CURRAN was an officer and, along with her husband, William Curran, apparently a coowner of Barrington Systems, a California corporation which went out of business around June 2006.

5.   Barrington Systems sponsored a pension plan covered by ERISA called the Barrington Systems 401(k) Plan (the "Plan"), which Barrington Systems established effective January 1, 1993.

6.   At all times relevant to this complaint, CURRAN was a cotrustee of the Plan. Also, CURRAN was solely responsible for the administration of the Plan and for handling Barrington Systems' finances, including the handling of payroll and the forwarding of employee contributions to the Plan. One employee noted

that CURRAN conferred with her husband, William Curran, about the company's finances, but CURRAN "always had the last word on who got money." The other Plan cotrustee, Michael Coover, was an employee of Barrington Systems. However, despite his title as Plan cotrustee, Coover appears to have had no responsibility with respect to Plan administration or Barrington System's finances.

### III.   STATEMENT OF PROBABLE CAUSE -- 18 U.S.C. § 664

7.   Under 18 U.S.C. § 664, it is a crime for a person to embezzle, steal, or unlawfully and willfully abstract or convert to his or her own use or to the use of another any of the assets of an employee benefit plan covered by ERISA.

8.   The Plan was funded by employee contributions and employer contributions. Our criminal investigation with respect to theft of Plan assets at this time relates only to the employee contributions which CURRAN failed to forward to the Plan after they were withheld from salary, as discussed below. The investigation does not address employer contributions.

9.   The Plan's assets were held in a trust account at Charles Schwab & Co., Inc. ("Schwab").

10.   ERISA regulations provide that employee contributions become Plan assets, and thus must be forwarded to the Plan, as soon as it is reasonably possible to segregate the contributions from the employer's general assets after they are withheld from salaries, but in no event later than the 15th business day of the month following the month of withholding.

11.   Our investigation disclosed that, from the second quarter of 2003 through the fourth quarter of 2004, a total of $36,790 in employee Plan contributions were withheld from the salaries of twelve Barrington Systems employees other than Cynthia and William Curran, and that CURRAN failed to forward those contributions to the Plan's Schwab account. Our investigation has not disclosed that Plan assets were ever held anywhere other than in the Plan's Schwab account.

12.   Our investigation determined the facts set forth in the previous paragraph, i.e., that $36,790 in employee contributions were withheld from salaries without being forwarded to the Plan, as follows: We obtained worksheets completed and signed by CURRAN showing the amounts of employee contributions withheld in each quarter from 2001 through 2004. These worksheets reflect the $36,790 in employee contributions discussed in the previous paragraph. We also obtained records for the Plan's Schwab account beginning in 2001, which show that no deposits or withdrawals were made to or from the account, except for approximately $15,000 deposited and then withdrawn in 2002 as a distribution to the Currans' son. Thus, from the second quarter of 2003 through the fourth quarter of 2004, CURRAN knowingly caused $36,790 in employee Plan

2

contributions to be withheld from salaries but never forwarded those contributions to the Plan.

13. A review of Barrington Systems' checking account statements reveals that there were sufficient funds in that account to properly forward the employee contributions to the Plan each month until February 2006.

14. Barrington Systems' office manager, Joanne Paul, informed me in an interview that she once saw a Plan Schwab account statement reflecting a balance of approximately $400,000. However, by the beginning of 2001 the account balance never exceeded approximately $4,000, aside from the period in 2002 when the account was built up to make a Plan distribution to the Currans' son.

15. On June 23, 2006, CURRAN authorized a wire transfer of $4,233.13 from the Plan's Schwab account to Barrington Systems' Bank of America account. That amount, plus the $25 wire fee, represented the last remaining funds in the Plan's Schwab account. Thus, the total amount currently documented as having been allegedly embezzled since the second quarter of 2003 is $41,023, computed as follows:

    $36,790 - employee contributions not forwarded
      4,233 - transferred to Barrington Systems
    $41,023

16. Several employees asked CURRAN for distributions of their Plan accounts, but she told them that the funds were not immediately available. CURRAN told one employee, David Chiang, that the Plan's assets were "invested" in Barrington Systems and that only 10% remained. Such an investment of Plan assets in Barrington Systems is prohibited by ERISA.

17. The employees have not received distributions of their Plan accounts. Their Plan allocation records reflect that, as of the end of 2004, most of the affected employees (not including the Currans) had Plan account balances in excess of $5,000. Several of the employees had Plan account balances in excess of $25,000. One employee informed me that her Plan account balance of approximately $40,000, mostly consisting of her own employee contributions, represented her life savings. These funds are no longer available for the employees' retirement savings. Our investigation has disclosed that the Barrington Systems employees were never made aware of CURRAN's illegal conversion of Plan assets to her or her company's use, and that no employees had ever granted CURRAN permission to use their retirement funds.

### IV. STATEMENT OF PROBABLE CAUSE -- 18 U.S.C. § 1027

18. Under 18 U.S.C. § 1027, it is a crime for a person to knowingly make false statements or representations of fact, or knowingly conceal, cover up, or fail

3

to disclose any fact the disclosure of which is required in a document required by ERISA to be published. ERISA requires that employee benefit plans file with the government annual reports called Forms 5500, that these Forms 5500 be made available and furnished to Plan participants, and that the Forms 5500 include information reporting, among other things, the Plan's financial information and disclosing certain activities.

19.     On October 13, 2004 CURRAN signed the Form 5500 for the Plan year ending December 31, 2003, which was filed with the federal government. On this document, CURRAN made the following false statements:

### False Statement Number 1

For Plan year ending 2003, in response to question Part I, 1c in Schedule I of the 2003 Form 5500, CURRAN reported net Plan assets totaling $356,922. However, Plan assets held at the Plan's Schwab account as of December 31, 2003 totaled only $4,139.18. Our investigation has revealed no other Plan assets or investments.

### False Statement Number 2

For Plan year ending 2003, in response to question Part II, 4a in Schedule I of the 2003 Form 5500, CURRAN reported that, during that Plan year, she did not fail to transmit to the Plan any participant contributions within the time period described in Title 29 CFR Section 2510.3-102. As discussed above, this regulation requires that employee contributions be forwarded to the Plan as soon as reasonably possible following when they are withheld from salaries, however in no event later than the 15th business day of the month following the month of withholding. In 2003, CURRAN did in fact fail to transmit to the Plan all of the participant contributions.

### False Statement Number 3

For Plan year ending 2003, in response to question Part II, 4f in Schedule I of the 2003 Form 5500, CURRAN falsely reported that the Plan did not suffer a loss caused by her fraud or dishonesty, when it had in fact suffered such a loss.

## V.     CONCLUSION

20.     Based on the foregoing information, I believe there is probable cause to believe that Cynthia P. CURRAN knowingly and willfully failed to forward employee contributions withheld from salaries to the Barrington Systems 401(k) Plan, in violation of 18 U.S.C. § 664.

21. Based on the foregoing information, I further believe there is probable cause to believe that Cynthia P. CURRAN knowingly made false statements in the Plan's 2003 Form 5500, in violation of 18 U.S.C. § 1027.

DAVID MOLTZEN
Senior Investigator
U.S. Dept. of Labor
Employee Benefits Security
Administration

SUBSCRIBED AND SWORN TO BEFORE ME
THIS 9th DAY OF MARCH, 2008

HON. JOSEPH C. SPERO
United States Magistrate Judge

5